CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED for
Roanoke
AUG - 9 2006
JOHN F. CORCORAN, CLERK
BY: M. Hupp
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| JAMAAL HICKS, ) | |
|     Plaintiff, ) | Civil Action No. 7:06cv00463 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| D. SIMPKINS, et al., ) | |
|     Defendants. ) | By: Jackson L. Kiser |
| ) | Senior U.S. District Judge |

Plaintiff Jamaal Hicks, a Virginia inmate proceeding pro se, brings this action pursuant to 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343. Hicks alleges that the defendants utilized an excessive amount of force to subdue him and then falsely charged and convicted him on three disciplinary violations related to that incident. Hicks seeks $11,500.00 in damages. Upon review of the record, I conclude that the plaintiff has not stated a claim upon which relief can be granted and, therefore, dismiss the complaint without prejudice, pursuant to 28 U.S.C. § 1915A(b)(1).

## I.

Hicks alleges that on February 27, 2006, he was "physically assaulted" by defendant, Captain D. Chambers. Specifically, he claims that at approximately 6:45 p.m., he was ordered by Chambers to return to his cell. However, Hicks admits he refused to enter his cell, but instead stood in the doorway of the cell and began to "express" his opinions to Chambers and other correctional officers regarding an alleged assault on another inmate. Hicks claims that during his tirade, Chambers shoved him into his cell, but Hicks refused to be dissuaded from "running his mouth," and continued to refuse to enter his cell. Hicks then alleges Chambers shoved him a second time and used pepper

spray to force him into his cell. Once forced into the cell, Hicks' cell door was shut and locked. Approximately 15 minutes later, Hicks was removed from his cell, and was afforded an opportunity to rinse any chemical residue from his eyes and person. Hicks does not allege that he requested any medical attention or treatment following the alleged incident, but claims that on March 1, 2006, two days after the incident, his back began to hurt. However, he does not allege that he ever sought any medical treatment for his alleged injury or that he continues to suffer any pain or discomfort related to his alleged injury.

As a result of the confrontation on February 27, 2006, Hicks was charged with three institutional infractions: disobeying a direct order, interfering with a security operation, and assault on a staff member. Hicks was convicted on all three charges and was sentenced to 15 days isolation on each sentence. Hicks claims that he was denied due process during the institutional hearing because the Hearing Officer failed to document in writing the facts relied upon to determine Hicks' guilt and failed to state whether his three terms of isolation were to run concurrently or consecutively.

## II.

A petition may be dismissed under 28 U.S.C. § 1915A(b)(1) if it is clear from the petition that the plaintiff is not entitled to relief. To state a cause of action under § 1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that such deprivation is a result of conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988). However, a complaint filed by an inmate challenging the conduct of an "officer or employee of a governmental entity" may be dismissed under 28 U.S.C.

2

§ 1915A(b)(1) if the complaint is "frivolous, malicious or fails to state a claim upon which relief may be granted."

### A. Excessive Force

The Eighth Amendment protects individuals against excessive prison sentences, as well as inhumane treatment and excessive force while imprisoned. See U.S. Const. amend. VIII. To establish an Eighth Amendment excessive force claim against a prison official, an inmate must satisfy a two-prong standard comprised of both an objective inquiry (whether the harm plaintiff suffered was sufficiently serious enough to amount to a constitutional violation) and a subjective inquiry (whether the defendant acted with a sufficiently culpable state of mind). Williams v. Benjamin, 77 F.3d 756, 761 (1996).

The subjective component of an excessive force claim requires an inmate to demonstrate that the force used by an institutional official, "inflicted unnecessary and wanton pain and suffering." Hudson v. McMillian, 503 U.S. 1, 7 (1992). In evaluating such a claim, "the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" Id. (quoting Whitley v. Albers, 475 U.S. 312, 32-21 (1986)). The Supreme Court and the Fourth Circuit have set out the following factors to consider in determining whether a prison official acted maliciously and sadistically: "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Hudson, 503 U.S. at 7 (1992) (quotations omitted); Williams, 77 F.3d at 762.

3

Also, the inmate must prove the correction official's actions were "'objectively harmful enough' to offend 'contemporary standards of decency.'" Stanley v. Hejirika, 134 F.2d 629, 634 (4th Cir. 1998) (quoting Hudson, 503 U.S. at 8). Although there is no requirement that an inmate suffer "serious" or "significant" pain or injury to demonstrate that a malicious or sadistic use of force was employed, he must allege "more than a de minimis pain or injury." Norman v. Taylor, 25 F.3d 1259, 1263 n. 4 (4th Cir. 1994). "[A]bsent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is de minimis." Taylor v. McDuffie, 155 F.3d 479, 483 (4th Cir. 1998). However, a de minimis physical injury may amount to an Eighth Amendment violation if the force used was of the sort "repugnant to the conscience of mankind." In Norman v. Taylor, the Fourth Circuit stated:

> We recognize that there may be highly unusual circumstances in which a particular application of force will cause relatively little, or perhaps no, enduring injury, but nonetheless will result in an impermissible infliction of pain. In these circumstances, we believe that either the force used will be "of a sort 'repugnant to the conscience of mankind,'" and thus expressly outside the de minimis force exception, or the pain itself will be such that it can properly be said to constitute more than de minimis injury.

25 F.3d at 1263, n. 4 (citations omitted).

According to Hicks, without cause, Chambers shoved him twice and then sprayed him with pepper spray; however, he has not alleged that he suffered any significant injury as a result of this incident. In fact, the only injury he alleges is lower back pain which did not surface until two days after the alleged incident and for which he did not seek any medical treatment. Accordingly, the court

4

finds that any injury is de minimis and does not amount to a constitutional violation.

Furthermore, Hicks has failed to allege any facts which establish those extraordinary circumstances on which a plaintiff can prevail on an excessive force claim when he suffers only de minimis injury. Taylor, 155 F.3d at 483. "[N]ot...every malevolent touch by a prison guard gives rise to a federal cause of action." Riley v. Dorton, 115 F.3d 1159, 1167 (4th Cir. 1997). And, merely a lack of due care for the prisoner's interests and safety fails to show the use of force which is "repugnant to the conscience of mankind." See Whitley v. Albers, 475 U.S. 312, 319 (1986)(finding that the infliction of pain in the course of a prison security measure, does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense).

Although Hicks claims that Chambers shoved him and sprayed him with pepper spray without cause, he admits that at the time of the incident he twice disobeyed a direct order to return to his cell. In fact, despite the direct orders, he concedes that he remained in the threshold of the cell, "express[ing]" himself, and only after physical force was utilized were officers able to close his cell door. As an inmate can reasonably expect to be physically restrained or moved when he refuses to obey a direct order to return to his cell during a security operation, I find that this does not present those "extraordinary" circumstances in which a plaintiff can prevail on an excessive force claim when he suffers only de minimis injury. See Taylor, 155 F.3d at 483.

### B. Disciplinary Charges

To the extent that Hicks' claims that his subsequent conviction and confinement on charges stemming from the February 27, 2006 incident are a violation of the due process rights afforded

5

under the Fourteenth Amendment, it fails.

Federal courts will not review the accuracy of a disciplinary committee's findings of fact. Kelly v. Cooper, 502 F. Supp. 1371, 1376 (E.D. Va. 1980). Such findings will only be disturbed if they are unsupported by any evidence or are wholly arbitrary and capricious. Smith v. Rabalais, 659 F.2d 539, 545 (5 th Cir. 1981), cert. denied, 455 U.S. 992 (1982). Although Hicks claims he was falsely charged and convicted of refusing to obey a direct order, interfering with a security operation, and assaulting an institutional staff member, from his complaint it is clear that he admits to at least two of the charges and there was ample evidence to support his charge and conviction on the third infraction. Hicks admits he refused to return to his cell as ordered, but instead stood in the doorway of the cell "express[ing]" himself. Further, he concedes that the cell doors could not be closed until correctional officers physically forced him into his cell. Accordingly, it is clear that there were sufficient grounds to charge and convict Hicks for refusing to obey a direct order and interfering with a security operation. Additionally, in that Hicks admits that he adamantly refused to enter his cell and thereafter continued to behave in a confrontational manner by yelling at Chambers and then moving towards Chambers once he was first pushed into his cell, it appears to the court that there were sufficient grounds to charge and convict him of assault on a staff member.

Furthermore, an inmate is afforded procedural protections during an administrative disciplinary hearing only when loss of statutory good time credits or some other liberty interest is at risk. Sandin v. Conner, 515 U.S. 472, 483-84 (1995); Wolff v. McDonnell, 418 U.S. 539, 557 (1974)(finding that when a liberty interest is in jeopardy, an inmate is assured the right to advance notice of the proceedings, a written statement by the fact finders as to the evidence relied on, to call witnesses and/or present documentary evidence in his own defense, and to be heard before a fair and

6

impartial tribunal). Changes merely "in a prisoners's location, variations of daily routing, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his original sentence to prison." Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). Such changes are necessarily functions of prison management that must be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively. Id. Accordingly, disciplinary convictions resulting only in a loss of privileges or a term of segregation, do not implicate any protected liberty interest and, therefore, inmates are not entitled to any procedural protections during those proceedings. In this case, Hicks was merely placed in isolation following his conviction. As his sentence does not implicate any protected liberty interest, he was not entitled to any procedural protections during that hearing. Thus, he fails to state a claim of constitutional magnitude related to any alleged deficiencies in that proceeding.

Finally, even assuming that the correctional officers made false reports resulting in his subsequent conviction, such violations of state procedural law do not implicate federal due process rights and are not cognizable under §1983.

### C. Isolation

Likewise, Hicks subsequent confinement in isolation following his conviction on charges stemming from the February 27, 2006 incident fails to state a claim under the Eighth Amendment. An inmate is not entitled to relief simply because of exposure to uncomfortable, restrictive, or inconvenient conditions of confinement, for, "[t]o the extent that such conditions are restrictive or even harsh, they are part of the penalty that criminal offenders pay for their offenses against society."

Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Therefore, in order to state a claim of constitutional significance regarding prison conditions, a plaintiff must allege, among other things, facts sufficient to show either that he has sustaining a serious or significant mental or physical injury as a result of the challenged conditions or that the conditions have created an unreasonable risk of serious damage to his future health. Strickler v. Waters, 989 F.2d 1375, 1380-81 (4th Cir. 1993); Helling v. McKinney, 509 U.S. 25 (1993). While isolation and segregation conditions may be inconvenient and unfortunate, Hicks has not alleged anything to suggest that because of the conditions he has sustained a serious or significant injury or is at risk of a future injury. Accordingly, I find that he has failed to state an actionable claim under the Eighth Amendment.

### III.

Based on the foregoing, I find that Hicks has not presented any claims on which relief can be granted. Therefore, I will dismiss the complaint without prejudice pursuant to 28 U.S.C. §1915A(b)(1).

The plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of this Order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send certified copies of this memorandum opinion and accompanying order to plaintiff and to counsel of record for the defendants, if known.

**ENTER:** This 9th day of August, 2006.

Senior United States District Judge